UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**PAUL GROVER MATT, III**,

Debtor.

Case No. **12-61456-7**

MEMORANDUM of DECISION

At Butte in said District this 18th day of November, 2013.

In this Chapter 7 bankruptcy, after due notice, a hearing was held November 12, 2013, in Billings on: (1) the Trustee's Motion for Approval of Stipulation to Compromise and Settle Claims With Creditors Larry Zeiler and Jo Ellen Zeiler Pursuant to F.R.B.P. 9019(a) filed August 30, 2013, at docket entry no. 145; and (2) the Trustee's Motion for Turnover filed September 30, 2013, at docket entry no. 176. Both motions are opposed by Debtor. The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana appeared at the hearing in support of his Motions; Debtor Paul Matt appeared *pro se* and in opposition to the Motions; and William M. Kebe, Jr. of Butte, Montana appeared at the hearing on behalf of Larry and Jo Ellen Zeiler. The Trustee and Susan B. Lovely testified. No exhibits were offered into evidence.

BACKGROUND

Debtor, through counsel, filed a voluntary Chapter 13 bankruptcy petition on September 7, 2012. On December 16, 2012, Debtor filed a Stipulation for Substitution of Attorney, which

1

Stipulation the Court approved on December 17, 2012. On December 26, 2012, Larry and Jo Ellen Zeiler filed a complaint against Debtor, thus commencing Adversary Proceeding No. 12-00064. In the complaint, the Zeilers requested, among other things, that the Court declare that a buy-sell agreement between Debtor and the Zeilers was not an executory contract and declare that Debtor had an obligation to close the buy-sell agreement and transfer the subject property to the Zeilers. Following a trial held April 23, 2013, the Court entered a Memorandum of Decision and Judgment on May 22, 2013, at docket entry no. 21 in Adversary Proceeding No. 12-00064, granting the Zeilers their requested relief. Debtor appealed this Court's Judgment to the Ninth Circuit Bankruptcy Appellate Panel.

Thereafter, the Court entered an Order on June 11, 2013, converting Debtor's case to one under Chapter 7 of the Bankruptcy Code. In the conversion Order, the Court explained:

> Debtor, who is an attorney, commenced this case September 7, 2012. Debtor filed Chapter 13 plans on September 19, 2012, November 12, 2012, November 14, 2012, and June 9, 2013. Confirmation of Debtor's Plan filed June 9, 2013, is opposed by the Trustee, the Bank of Red Lodge, and Larry and Jo Ellen Zeiler. Debtor proposes to fund his latest Plan, in large part, with the sale of his real properties located in Stillwater County. Debtor classifies Bank of Red Lodge as having an unimpaired secured claim, but has not made a payment to Bank of Red Lodge during the pendency of this case.
>
> In the Plan, Debtor also proposes to reject a Buy-Sell Agreement that Debtor entered into with Larry and Jo Ellen Zeiler on January 29, 2012. The Buy-Sell Agreement was the subject of Adversary Proceeding No. 12-00064. In that Adversary Proceeding, the Court entered a Memorandum of Decision and Judgment in favor of the Zeilers on May 22, 2013, finding that the Buy-Sell Agreement was not an executory contract and directing that "Defendant Matt Grover Matt, III shall, within fourteen (14) days of this Judgment, take the steps necessary to close the Buy-Sell Agreement and transfer to the Plaintiffs Section 18, Township 4 South, Range 17 East, Lot 3-B Midnight Ranch tract, COS 326449." The Court incorporates by reference the Memorandum of Decision entered at docket entry no. 21 in Adversary Proceeding No. 12-00064. Debtor has appealed the Court's May 22, 2013, decision, but he has not filed a motion for

> stay pending appeal as of the time of the hearing on June 11, 2013, and he has not complied with the Judgment by taking the steps necessary to close the Buy-Sell Agreement. Moreover, by prior admission, the Court's May 22, 2013, ruling makes it virtually impossible for Debtor to formulate a feasible Chapter 13 plan.
>
> As shown above, this case has been pending for over nine months and Debtor still has not filed a confirmable plan. Debtor has also admittedly not complied with the Court's Judgment of May 22, 2013, nor has Debtor filed a request for stay pending appeal. Based upon Debtor's testimony and admissions, the Court finds cause to convert this case to Chapter 7 of the Bankruptcy Code.

The Court entered an Order on September 24, 2013, permitting Debtor's second attorney to withdraw, leaving Debtor *pro se*.

After conversion of this case to Chapter 7, the Trustee entered into the agreement with the Zeilers, for which he now seeks approval. As set forth in his Motion, the agreement, in general, provides that "at closing of the sale of Lot 3-B, Zeilers shall pay the purchase price as provided in the Buy-Sell. In consideration, Trustee will convey merchantable title for Lot 3-B, which shall include conveyance of title free and clear of the liens of Bank of Red Lodge, Cindy Smith and Richard Tegtmeier and additional consideration of $10,000.00 as consideration of Trustee's release of any claims against Zeilers and Trustee's dismissal of the Appeal with prejudice." In addition, the "Zeilers may also file, without objection by the Trustee, a proof of claim in the bankruptcy for the amount of attorney fees expended to date in seeking to enforce the Buy-Sell plus the $10,000.00 paid as consideration for this settlement."

Debtor opposes approval of the Trustee's settlement with the Zeilers arguing the proposed sale of Lot 3-B for $170,000, plus an additional $10,000 for the Bankruptcy Estate, is far below the value of Lot 3-B, which Debtor maintains is $294,000. Debtor argues that Lot 3-B, along with contiguous properties identified as Lots 3-C and 3-D, should be placed on the market

3

with Prudential Real Estate Agent Susan Lovely and sold so all Debtor's creditors can be repaid. Debtor submits in his objection "that the evidence to be presented at the hearing October 15, 2013, will clearly 'tip the scale' in favor of not approving the settlement and placing Debtor's/ Estate's property on the market for a period of time with realtor Susan Lovely of Prudential Realty; the Court has previously authorized her employment."

As referenced in Debtor's opposition, Debtor filed an application to employ Susan Lovely on November 14, 2012, to sell real estate, with a 6% sales commission. The Court approved Debtor's application to employ Susan Lovely on that same date. Subsequently, the Trustee filed an application to employ Susan Lovely on October 8, 2013, again at a 6% sales commission. The Court approved the Trustee's application on October 8, 2013. The Trustee currently has Lot 3-C listed for sale at a price of $147,500 and Lot 3-D listed for sale at a price of $159,500. Susan Lovely has not had any interest in either Lot 3-C or Lot 3-D.

Susan Lovely testified that Lot 3-B was listed for sale in 2009 at a price of $390,000. As set forth in the May 22, 2013, Memorandum of Decision entered in related Adversary Proceeding 12-00064, Debtor's property was again listed for sale in 2011:

> In late 2011, Matt listed Tracts 3-B, 3-C, and 3-D for sale together for a total price of $750,000.00. None of the parcels sold. In addition, at that time, Matt had no funds, his home was in foreclosure, and he was behind on his debts. Because of his financial condition, Matt decided that an auction might be a good way to sell Tracts 3-B and 3-C, and generate some cash. Matt did some research and concluded he could get $250,000 to $300,000 for Tract 3-B. Based upon his research and after talking to auctioneer Rick Young, Matt decided not to set a minimum or reserve bid on Tract 3-B, but reserved the right to accept or reject any bid on Tract 3-C.

The Zeilers were the successful bidders at an auction held June 29, 2012, bidding $170,000 for Lot 3-B. Debtor signed a Buy-Sell Agreement reflecting the sales price of

4

$170,000.  The sale was scheduled to close on July 18, 2013.  On the date of the auction, the Zeilers paid $34,000.00 in the form of a non refundable down payment to be applied at closing and agreed to pay an additional $136,000.00 on or before closing.  On July 18, 2012, as scheduled, the Zeilers tendered certified funds in the amount of $135,751.19 for the property and signed all documents necessary to complete their portion of the closing.  Debtor, however, instead of closing the sale as set forth in the Buy-Sell Agreement, filed for bankruptcy and sought to reject the Buy-Sell Agreement as an executory contract.  At the request of the Zeilers, the title company holding the purchase price of the property deposited the Zeilers' certified funds of $135,751.19 into the title company's trust account on October 9, 2012, where the funds still remain.

Lot 3-B is encumbered by a first position lien in favor of Bank of Red Lodge.  In addition, Lot 3-B is encumbered by a Montana Trust Indenture in favor of Cindy Smith dated June 21, 2012, and recorded June 27, 2012, which secured an indebtedness in the principal sum of $50,000.00, and a Montana Trust Indenture in favor of Richard Tegtmeier dated June 21, 2012, and recorded June 27, 2012, which secured an indebtedness in the principal sum of $50,000.00.  The Trust Indentures recorded June 27, 2012, stem from loans Cindy Smith and Richard Tegtmeier made to Debtor in March of 2011.  The Trustee entered into stipulations to compromise and settle claims with Cindy Smith and Richard Tegtmeier, which stipulations were approved by the Court, without opposition, on October 1, 2013.

As set forth in the approved agreements, the Trustee asserted that he could avoid Cindy Smith's and Richard Tegtmeier's Trust Indentures against Lots 3-B and 3-C under 11 U.S.C. §547 as preferential transfers made within 90 days of the date of the filing of Debtor's

bankruptcy.  Cindy Smith and Richard Tegtmeier disputed the Trustee's assertions and the parties eventually agreed to compromise and settle all controversies between them.  In part, the parties agreed that the Trustee would take such actions as necessary to close the sale of Lot 3-B to the Zeilers and to sell lot 3-C, and that the sales would be free and clear of liens under 11 U.S.C. § 363, with all valid liens attaching to the proceeds of the sale.   Cindy Smith and Richard Tegtmeier agreed to consent to the sale of the two tracts if the terms of the sales provided for the Trustee to (1) pay all normal and usual costs relative to the sales including but not limited to closing fees, title insurance, tax proration and deed preparation; (2) pay all amounts due the Bank of Red Lodge on its First Trust Indenture; (3) pay all Trustee's administrative fees and expenses attributable to the sales allowed under the Bankruptcy Code; (4) pay any remaining amounts to Cindy Smith until her debt is paid in full; and (5) pay any remaining amounts to Richard Tegtmeier as the holder of the third priority position trust indenture against Lots 3-B and 3-C.  Once Bank of Red Lodge, Cindy Smith and Richard Tegtmeier were paid in full, the balance of any sales proceeds will be property of the estate for payment to creditors of the estate.  As previously noted, Debtor did not object to approval of the Trustee's agreements with Cindy Smith and Richard Tegtmeier, which specifically provide for the sale of Lot 3-B to the Zeilers.

## DISCUSSION

In deciding whether to approve the parties' agreement, the Court considers the factors articulated in *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986):

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

As explained in *A & C Properties*:

> The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims. The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed.

*Id.* at 1380-81 (citations omitted).

Debtor opposes the Trustee's settlement with the Zeilers arguing Lot 3-B is worth in excess of $180,000 (the $170,000 reflected in the buy-sell agreement, plus the additional $10,000 the Zeilers have agreed to pay as part of their settlement with the Trustee). Debtor first tried to sell Lot 3-B in 2009 at a price of $390,000, and also tried to sell Lots 3-B, 3-C and 3-D in 2011 for $750,000. When Debtor's efforts to sell the lots were unsuccessful, Debtor decided to offer the lots for sale at an auction that as far as the Court can ascertain, was widely advertised. That auction resulted in a sales price of $170,000 for Lot 3-B, and a no-sale on Lot 3-C.

In addition, after filing his bankruptcy petition, Debtor hired Susan Lovely to list his properties for sale in November of 2012. While Debtor contends that Lot 3-B is worth $294,000, Susan Lovely testified that she thought she could sell Lot 3-B for perhaps $225,000 if listed for 6 months. If Susan Lovely could sell Lot 3-B for $225,000 within 6 months, for which there is no guarantee, the Estate would receive $211,500 after Susan Lovely's commission. From those proceeds, the Trustee would spend some amount litigating his claims with the Zeilers, including perhaps litigating Debtor's appeal of this Court's May 22, 2013, Judgment in Adversary Proceeding No. 12-00064.[1] Considering all relevant factors, including the Trustee's approved

---

[1] The Trustee testified that the Court's May 22, 2013, Judgment was "sound," despite Debtor's belief to the contrary.

agreements with Cindy Smith and Richard Tegtmeier, the fact that Debtor was unsuccessful in selling Lot 3-B between 2009 and 2013, and was only able to sell Lot 3-B after an auction, which auction appears to have been conducted in a reasonable manner, the Court finds that the Trustee's agreement with the Zeilers is "fair and equitable" as required by *In re A&C Properties*.

With respect to the pending motion for turnover, the Trustee filed an *ex parte* motion on November 11, 2013, seeking to freeze access to two storage units. The Court granted the Trustee's *ex parte* motion on November 13, 2013. On November 15, 2013, the Trustee reported to the Court that he had secured the two storage units that were the subject of the *ex parte* motion. The 1973 MGB, VIN GHN5UD295341G, which is the subject of the Trustee's pending Motion for Turnover, was in one of the storage units. Debtor provided the Trustee with a key that he represented was to the ignition of the MGB, but the Trustee was unable to determine if the key did indeed fit the ignition of the 1973 MGB because the vehicle was locked and the key that Debtor provided did not fit in the door lock. In light of the Trustee's Report to the Court and given the Court's oral ruling on the matter at the hearing, the Motion for Turnover is granted.

In accordance with the above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's Motion for Approval of Stipulation to Compromise and Settle Claims with Creditors Larry Zeiler and Jo Ellen Zeiler Pursuant to F.R.B.P. Rule 9019(a) is granted; the Stipulation to Compromise and Settle Claims With Creditors Larry Zeiler and Jo Ellen Zeiler is approved; and the Trustee and the Zeilers shall henceforth be bound by and shall perform according to the terms and conditions of the approved Stipulation to Compromise and Settle Claims.

IT IS FURTHER ORDERED that the Trustee's Motion for Turnover filed September 30,

2013, is granted; and Debtor shall immediately deliver to the Trustee any and all keys to the 1973 MGB, VIN GHN5UD295341G, including keys that fit the door locks.

          BY THE COURT

          /s/ Ralph B. Kirscher

          HON. RALPH B. KIRSCHER
          U.S. Bankruptcy Judge
          United States Bankruptcy Court
          District of Montana